FRANCIS V. DUPONT AND ALICE DUPONT, COEXECUTORS, ESTATE OF THOMAS COLEMAN DUPONT, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72772. Promulgated October 12, 1934.

*E. F. Colladay, Esq.*, and *Wilton H. Wallace, Esq.*, for the petitioners.

*S. L. Young, Esq.*, and *R. Sears Garnett, Esq.*, for the respondent.

OPINION.

ARUNDELL: Section 112 (f) of the Revenue Act of 1928, which is applicable to this case is set out in the margin.[1]

Petitioners make two contentions. First, that in the computation of taxable gain there should be included as an expenditure the sum of $24,250, representing the basis of the Valley Garden property which was used by the decedent as the site of partial replacement. We can neither find in the statute any warrant nor deduce from it any logical reason for so treating the basis of the Valley Garden property. The statute provides for nonrecognition of gain in respect of proceeds of involuntary conversions which are expended in replacement. Here it is plain that no part of the proceeds were expended for the acquisition of the Valley Garden as replacement property. It might be that an expenditure in anticipation of involuntary conversion, where such conversion is imminent, might be found to be closely enough related thereto to come within the nonrecognition provisions. That, however, is not the situation here, for it is stipulated that a portion of the Valley Garden property was acquired prior to March 1, 1913, more than 15 years before negotiations opened for the acquisition of the Old Mill, and it is not shown that the remainder was acquired with any thought of using it as replacement property.

The other point urged by petitioner is that the recognizable gain should be determined by first allowing a deduction of the basis from the gross proceeds and then allowing a credit against the gain so computed of an amount represented by the ratio which the

[1] (f) *Involuntary conversions.*—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

amount actually expended bears to the gross proceeds. The actual computation for which petitioners contend is as follows:

| | |
|---|---|
| Gross proceeds | $236,000.24 |
| Basis (3/1/13 value plus additions) | 96,753.24 |
| Tentative gain | 139,247.00 |

Credit for partial replacement:

$$\frac{\$126{,}526.70 \text{ (expended)}}{\$236{,}000.24 \text{ (gross proceeds)}} \times \$139{,}247 = \qquad 74{,}654.42$$

| | |
|---|---|
| Tentative gain | 139,247.00 |
| Credit for partial replacement | 74,654.42 |
| Taxable gain | 64,592.58 |

The respondent computed the taxable gain to be $109,473.54 by deducting the $126,526.70 expended in replacement from the $236,-000.24 received for the Old Mill property.

The fundamental rule under the gain or loss provisions of the taxing statutes is to recognize all gain or loss on the sale or exchange of property. In certain excepted cases, all enumerated in the statute, the general rule of recognition is limited. One of the excepted cases is that of involuntary conversion. Whether the conversion of property is voluntary or involuntary, if the price received exceeds the basis there is a gain, which, without an applicable limitation or exception, is subject to tax. By listing involuntary conversion among the cases excepted from the general rule of full recognition of gain, Congress has sought to give some measure of relief to taxpayers who are compelled to take a profit without regard to their own wishes. Although these are relief provisions (*Paul Haberland*, 25 B.T.A. 1370), it was obviously not intended to extend them to all involuntary gains, but rather to condition the extent of the relief upon the taxpayer's own actions after realizing the gain. In other words, while recognizing the inequity of taxing involuntary gains in all cases to the same extent as voluntary gains, once the gain is realized the taxpayer has several avenues open to him, any one of which he may voluntarily take and thus by his own action place a limit on the amount of tax he will be required to pay. He may elect to pocket his gain and subject it to tax in its entirety. He may, under the respondent's regulations, replace the converted property at a cost at least equal to the proceeds of the conversion, or if this is not practicable, he may establish a replacement fund and thus escape any tax. Or he may replace in part and become subject to tax on a part of the gain realized. The proper method of determining the taxable part is the question here.

The 1921 Act directed the use of a proportionate method of determining the taxable gain in cases of partial replacement. It allowed " as a deduction such portion of the gain derived as the portion of the proceeds so expended bears to the entire proceeds." Sec. 214(a)(12). Congress was aware of that situation and evidently intended to change the method in the Revenue Act of 1924. Section 203(b)(5) of that act is the same, except in one unimportant particular, as section 112(f) of the 1928 Act. In the Committee Reports accompanying the bill which became the Revenue Act of 1924 it is stated:

> Under the existing law if only a portion of the proceeds from an involuntary conversion is used in the replacement, then only a corresponding part of the gain or loss is not recognized. In the bill the gain from the transaction is recognized, but in an amount not to exceed the unexpended portion of the proceeds. This rule is the same as the one set forth in subdivision (d)(1) of this section in the case of exchanges of property in connection with which there is " boot " transferred. (*House Ways and Means Committee Report,* p. 14; Senate Finance Committee Report, p. 15.)

Using as an analogy the exchange provisions of the statute referred to in the Committee reports, it seems clear that in the case of partial replacement the taxpayer should be subject to tax on the excess of the proceeds over his replacement cost where such cost exceeds the basis. See articles 573 and 574 of Regulations 74, dealing with the receipt of " boot " on an exchange. In the Senate Committee Print of the changes made in the Revenue Act of 1921 the above quotation is repeated and the following example given:

> Example: A vessel purchased by A for $100,000 is destroyed and A receives insurance in the amount of $200,000. If he invests the entire $200,000 in a new vessel similar to the one destroyed, no gain from the transaction is recognized. If, however, he invests only $150,000 in the new vessel, he has realized taxable gain to the extent of the $50,000 which was not reinvested. (Report dated March 6, 1924, p. 6.)

In view of the quoted statements it is our opinion that Congress deliberately intended to change the rule theretofore applied in computing the amount of taxable gain in cases of partial replacement, and thereafter to tax all gain not used either to replace the converted property or held in a replacement fund for that purpose. To hold otherwise would require us to say that the change in language was meaningless despite its consideration by the responsible Congressional Committees.

It cannot be said that the respondent's continued use of the method prescribed by the 1921 Act has received legislative sanction. In the first regulations issued following the enactment of the Revenue Act of 1924 the language of the statute is repeated verbatim, and has been repeated in all subsequent regulations. See art. 1579, Regulations 65 and 69; art. 579, Regulations 74. The proportionate method

of computation under the 1921 Act and article 261 of Regulations 62 was omitted from the later regulations and, as far as we know, there have been no published rulings holding the use of the proportionate method permissible under any of the revenue acts later than that of 1921. Furthermore, the respondent's power to promulgate regulations is limited by the statute to directing the use of the proceeds to replace or establish a replacement fund, and does not extend to the prescription of a method of computing the amount of taxable gain.

It is accordingly our view that the method used by the respondent in this case affords the petitioners the full relief to which they are entitled under the applicable statute.

*Decision will be entered for the respondent.*