GEORGE A. SPENCER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GERTRUDE L. SPENCER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 75258, 75259. Promulgated January 22, 1936.

*George V. Whittle, C. P. A.,* and *S. E. Katopothis, Esq.,* for the petitioners.

*S. B. Anderson, Esq.,* for the respondent.

#### OPINION.

McMAHON: These are proceedings, duly consolidated for hearing and opinion, for the redetermination of deficiencies in income taxes for the year 1931, each in the amount of $163.78. It is alleged in

each petition that the respondent erred in including in net income an amount of $10,411.02, representing one half of an alleged community profit in connection with a condemnation award by the city of Seattle for a right of way over petitioners' property.

The petitioners, husband and wife, are individuals with residence at Seattle, Washington. Originally they owned 534 lots in Ladd's Second Addition to South Seattle, Washington. Up to the time in question herein they had sold over half of such lots on contracts.

During the year in question, 1931, the city of Seattle condemned a 200-foot right of way diagonally across Ladd's Second Addition to South Seattle for the purpose of erecting a high tension electric line, consisting of towers from which were to be suspended heavy transmission lines. Numerous lots and parts of lots, which belonged to petitioners and had not been sold, aggregating 112,156 square feet, were condemned. There were also condemned a great many lots which petitioners had sold under contracts to others.

By a deed dated October 19, 1931, the petitioners conveyed their lots and portions of lots which were required for the right of way to the city of Seattle. The consideration recited therein was $33,253. The deed contains, among others, the following provision:

This deed includes a waiver of all damages of every kind and nature to the grantors' property in Ladd's Second Addition to South Seattle.

Petitioners had previously given the city of Seattle a deed to the properties affected, but such deed did not contain the above-quoted provision. The new deed containing such provision was prepared by the city in order to prevent suits by the petitioners for damages which might be sustained by other property of petitioners by reason of the condemnation of the land and the erection of this high tension line.

In the erection of this power line, there are three elements of damage, namely, the actual taking of property, the severance damage, or the loss in value of remaining fractional lots due to the fact that they are too small for useful purposes, and the loss in value of these fractional lots and other adjoining and adjacent remaining lots due to the proximity of such a high tension power line. People object to being adjacent to such a line, claiming that it affects their radios. There is danger the line may break and thereby damage the remaining property or its occupants.

In arriving at the consideration to be paid petitioners, the parties considered that part of the total amount of $33,253 paid was consideration for damages to adjoining and adjacent property of petitioners. The city recognized that there was actual damage outside of the property actually taken. The figure of $33,253 thus covered the value of the property taken, the severance damage, or damage to remaining fractional lots, and the gross damage to remaining

fractional lots and other remaining adjoining and adjacent lots of the petitioners. There was not any definite allocation to these three respective classes of damage. The amount of $33,253 represented an arbitrary settlement arrived at in negotiations between the city and the petitioners. Petitioners were asking a larger amount, $42,000, based on the previous selling price of adjoining lots, plus assessments. The city made a smaller offer than that finally accepted, and after about two weeks of negotiation, the parties agreed upon the settlement of $33,253.

In their income tax returns for the year 1931 the petitioners allocated $22,916.97 of the amount of $33,253 as the amount received for the lots actually taken over by the city, and allocated $10,336.03 thereof as severance damage for the fractional lots and the gross damage to remaining fractional lots and other remaining adjoining and adjacent lots of the petitioners.

In determining the deficiency as to each petitioner the respondent determined that there was a profit on the sale of the property for the right of way in the amount of $20,822.03, that the total profit on the sale in 1928 by petitioners of all real estate was $32,853.76, of which $23,537.01 had already been reported as income, that there was a remainder of profit on sales of real estate which had not been reported of $9,316.75, and that each petitioner was taxable on one half of that amount, or $4,658.38, as representing the community interest of each petitioner in such additional profit on all sales of real estate; and in effect held that each petitioner was taxable on one half of $20,822.03, or $10,411.02, as representing profit on the sale of the property for the right of way.

Of the amount of $33,253 paid by the city of Seattle to petitioners, the amount of $22,431.20 represented remuneration for the property actually condemned and taken over by the city, and the amount of $10,821.80 represented severance damage, or damage to remaining fractional lots from severance, and gross damage to remaining fractional lots and other remaining adjoining and adjacent lots of petitioners occasioned by the proximity of the power line.

Upon the foregoing facts, which we find and which are all we can find from the record, the sole question presented is whether the respondent erred in including in taxable income of each of the petitioners an amount of $10,411.02 as representing one half of community profit arising from the consideration paid to them by the city of Seattle for a right of way over petitioners' property. In their returns the petitioners claimed, and now contend, that of the amount paid by the city, $10,336.03 is not taxable income to the petitioners since it represents "severance and gross damages to remainder."

Petitioners do not contend that as a matter of law taxable income may not, in some cases, be derived from the sale or transfer of prop-

erty as a result of condemnation. In any event, it is well settled that the gain in such a transaction is recognized under subdivision (a) of section 112 of the Revenue Act of 1928, unless one or more of the exceptions contained in subdivision (f) of that section apply. There are set forth in the margin applicable provisions of the Revenue Act of 1928.[1] See *Francis V. duPont et al., Coexecutors,* 31 B. T. A. 278; *John J. Bliss,* 27 B. T. A. 803; *Fullilove* v. *United States,* 71 Fed. (2d) 852; certiorari denied, 293 U. S. 586; *Bandes* v. *Commissioner,* 69 Fed. (2d) 812; certiorari denied, 293 U. S. 568; and art. 579 of Regulations 74, promulgated under the Revenue Act of 1928. In the instant proceedings, petitioners have not shown that any of such exceptions apply.

Petitioners do contend that the portion of the total consideration representing the "severance and gross damages to remainder" is not income to them but, on the other hand, should be deducted from the basis of the remaining property for purposes of determining gain or loss upon any subsequent disposition of such remaining property. Petitioners, in their returns, claimed that the portion of the consideration which was paid by the city to them as such "severance and gross damages to remainder" amounted to $10,336.03, which is $74.99 less than they allege in their petitions. While in no event could we award petitioners more relief than they plead for and in the view which we take this discrepancy is of no consequence, upon a consideration of the whole record we have found, as a fact, and now hold that

---

[1] SEC. 111. DETERMINATION OF AMOUNT OF GAIN OR LOSS.

(a) *Computation of gain or loss.*—Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113, * * *.

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) *General rule.*—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

*           *           *           *           *           *           *

(f) *Involuntary conversions.*—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; * * *

(b) *Property acquired before March 1, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be:

(1) the cost of such property (or, in the case of such property as is described in subsection (a) (1), (4), (5), or (12) of this section, the basis as therein provided), or

(2) the fair market value of such property as of March 1, 1913,

whichever is greater.

the amount of $10,821.80 of the total consideration paid to petitioners represented severance damage or damages to remaining fractional lots from severance, and the gross damage to remaining fractional lots and remaining adjoining and adjacent lots of petitioners occasioned by the proximity of the power line, and that the amount of $22,431.20 represented remuneration for the property actually condemned and taken over by the city. The deed to the city recognizes and witnesses testified that some of the amount paid represented damages to other remaining property of petitioners. Our allocation of the total amount is based upon all the evidence, particularly that showing that after petitioners made their settlement with the city other property owners in the same subdivision arrived at a settlement with the city through a court order upon the basis of 20 cents per square foot of property actually condemned and taken over by the city. The evidence shows that there were 112,156 square feet of land belonging to petitioners taken over by the city, which, at the rate of 20 cents per square foot, would amount to $22,431.20. This is $485.77 less than the amount shown by petitioners in their returns as the consideration for the land actually taken.

Despite the fact, however, that petitioners have shown that the above allocation should be made, we are forced to hold, upon the whole record, that the petitioners can not prevail here. The determination of the respondent is favored with a presumption of correctness and the burden is upon the petitioners to show error therein. *Welch* v. *Helvering*, 290 U. S. 111. The petitioners have failed to meet their burden. In the first place we have no evidence that the respondent, in the determination of the deficiencies, included in taxable income any portion of the amount paid for damages to the remaining property of the petitioners. Assuming, for the purposes of this discussion only, that respondent did, there is no evidence that such action was erroneous. There is no evidence in the record as to the basis of such remaining property for the purposes of determining gain or loss now or in the future, and we therefore can not determine what portion of the amount paid as damage to such other property, if any, constituted taxable gain to the petitioners in the year before us. See I. T. 2599, *infra*, and discussion thereof which follows.

In the notices of deficiencies the respondent held that there was a profit on the sale of the right of way by petitioners in the amount of $20,822.03. We have found and held that the amount paid by the city to petitioners for land actually taken over was $22,431.20. We are not informed as to how respondent arrived at his determination of profit; nor have the petitioners shown us the basis of the property actually taken over by the city. They have thus failed to show the correct amount of gain upon the disposition of the land or that there

was no gain. It may be that of the amount of $22,431.20 paid by the city to the petitioners for the land actually taken over, $20,822.03 represented gain or profit to petitioners. There is nothing in the record to show the contrary.

Upon the whole record we must, therefore, approve the respondent's determination.

Petitioners cite I. T. 2599, X-2 C. B. 170,[2] which is set forth in the margin. In the view we have taken above, we find it unnecessary to determine and do not determine whether I. T. 2599 correctly states the law as to the treatment, for purposes of taxable gain, of that portion of an *award by a court* for damages to property other than that actually condemned and taken over. It may be observed in passing, however, that I. T. 2599 deals only with *severance* damages *awarded by a court*. In the instant proceeding, the amount in question was not an *award by a court* but represented the amount paid the petitioners by the city through settlement. Furthermore, here we have another element of damage besides *severance* damage, namely, damage to remaining fractional lots and other remaining adjoining and adjacent lots occasioned by the proximity of the power line, and there is no basis for the allocation of the amount of $10,821.80 as between these two types of damage.

None of the other authorities cited by petitioners permit, much less require, a different holding.

*Decision will be entered under Rule 50.*

---

[2] Where the court proceedings show a sum paid for acquisition of land separate from the amount paid for severance damages, gain or loss results from the portion of each award paid for the acquisition of land. No taxable gain is recognized with respect to that portion of the award which represents the severance damages, but the amount thereof should be deducted from the basis to be used in determining gain or loss upon the subsequent disposition of the remaining portion of the property, unless the amount of severance damages exceeds the basis of the remaining portion of the property, in which case such excess is taxable gain.