WASHINGTON MARKET COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43912. Promulgated February 23, 1932.

*Chester A. Bennett, Esq., Hugh H. Obear, Esq.,* and *J. V. Morgan, Esq.,* for the petitioner.

*Eugene Meacham, Esq.,* and *C. A. Lowery, Esq.,* for the respondent.

580

581

**OPINION.**

Van Fossan: The petitioner suggests that the Government is estopped to assert the deficiency. It cites no authority and makes little reference to the matter in its brief. We have held repeatedly that the respondent is not estopped to reverse a prior ruling made by him concerning the same tax year at any time prior to the expiration of the statute of limitations, provided no settlement has been made under the provisions of section 3229 of the Revised Statutes. *James Couzens,* 11 B. T. A. 1040; *Chattanooga Coke & Gas Co.,* 12 B. T. A. 782; *Frances P. McIlhenny et al., Executors,* 13 B. T. A. 288; affd., 39 Fed. (2d) 365; *Oilbelt Motor Co.,* 16 B. T. A. 831; *Stein-Bloch Co.,* 23 B. T. A. 1161. Moreover, there is no evidence that petitioner has been damaged by reliance on the ruling in question. The respondent was not estopped to assert the claim for additional taxes.

The petitioner claims that the item of $49,131.99 was unwarrantedly added to its income by respondent and introduced testimony to show that said item was included in the figure of $99,519.21 "interest received, etc." reported by it and resulting in a net income of $76,492.91 shown on the face of petitioner's return.

Petitioner's problem, however, is to show the error of respondent's determination. To do this he must meet respondent on his own ground. In computing the deficiency the Commissioner started with

the figure of $86,991.50 net income as disclosed by the books. To this he added, among other items, one of $49,131.99 "interest received." Both of these figures appear in Schedule L on page 4 of petitioner's return. The figure $99,619.21 does not appear in respondent's computation. The question, therefore, was not, as apparently conceived by petitioner's counsel, whether the figure of $49,131.99 interest received was already included in the figure of $99,619.21 "interest on bank deposits, etc." shown under item 5 of petitioner's return, but whether in respondent's computation the item of $49,131.99 was included in the basic figure of $86,991.50. A reasonable inference from the return is that it was not so included. In any event petitioner has not shown error in respondent's computation in this respect.

At the hearing respondent raised as an affirmative issue the correctness of his previous action in allowing petitioner to deduct, in determining the amount of profit, if any, the sum of $104,238.32 from the gross award, as expenses incurred in securing the same. We have held in many cases that commissions and fees paid for effecting a sale of property should be deducted from the sale price in computing the profit earned. *Jessie G. Sheen*, 6 B. T. A. 114; *Frank Cavanaugh*, 19 B. T. A. 1251; *W. A. Bahr*, 10 B. T. A. 637; *Bamma Baucum*, 17 B. T. A. 1312; *Florence G. Baldwin*, 23 B. T. A. 512. The engineering expenses, surveys, witness fees and attorneys' fees incurred in this case in connection with the condemnation proceedings before the commission and in the Court of Appeals bear close resemblance to the necessary costs of a sale. The position of petitioner is sustained.

We may pass without extended discussion the contention raised in petitioner's brief that all that petitioner was paid for was its equity in the property and that the amount of $310,309.66 withheld by the Government to satisfy mortgage bonds, taxes, and other liens standing against the property was never received by it. The relief from the obligations and liabilities and their payment by the Government constituted a payment to petitioner equally as though the money had been paid to petitioner and petitioner had in turn satisfied the same.

The last and principal question in the case is whether or not petitioner realized a profit of $283,039.77, or profit in some other amount, as a result of the condemnation proceedings under which the property of the petitioner, known as Center Market, in Washington, was taken for public purposes. The respondent computed the profit by deducting from the gross award of $1,522,177.87 the sum of $104,-238.32, expenses of suit, and from the remainder the cost of replacing property, $1,134,919.78, thus arriving at a figure of $283,039.77, which

he characterized as profit. It is the contention of petitioner that respondent has totally misapplied the provisions of the revenue act in this determination.

Section 203 (a) and (b) (5) of the Revenue Act of 1924 is as follows:

Sec. 203. (a) Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 202, shall be recognized, except as hereinafter provided in this section.

\*      \*      \*      \*      \*      \*      \*

(b) (5) If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

At the time the Government condemned and took over the physical assets of the business which the petitioner was conducting on Reservation No. 7 in Washington, D. C., that business consisted of four activities or divisions: (1) Renting stalls for retail markets; (2) manufacturing and selling ice; (3) furnishing cold storage refrigeration; and (4) leasing space to wholesalers for use in storing goods and displaying them for sale to retailers. After the petitioner was forced to abandon its business on Reservation No. 7 it was unable to secure another location in Washington at which it could carry on its retail business and, hence, was compelled to eliminate that division in its new plant at 4½ Street and Virginia Avenue, S. W. The facilities constructed at the new plant at a cost of $1,134,919.79 and represented by the stock of the Terminal Refrigerating and Warehousing Company, which the petitioner owned, constituted a complete replacement of the petitioner's former equipment used in operating the various phases of its business except that of providing stalls for retail market dealers. We are of opinion, and there does not seem to be any dissent by either party from the conclusion, that the erection of the new plant was the " acquisition of other property similar or related in service or use to the property so converted " or " the acquisition of control of a corporation owning such other property " as provided in section 203 (b) (5). Cf. *Henderson Overland Co.*, 4 B. T. A. 1088. The notice of deficiency recognized that the above quoted section is applicable. Petitioner does not dispute this, but contends that the tax has been incorrectly computed thereunder. In

this contention we concur. It does not follow from the fact that there has been a replacement under this statute that the excess above the replacement cost is all gain. The test to be applied in determining whether there is a replacement is the character of the service or use. It is not a financial test. But whether a gain results requires a consideration of the money involved.

As we view it, section 203 (b) (5) is a special or relief provision designed to prevent an inequitable incidence of taxation, perhaps to prevent the very action that is here proposed. Under the first part of this section, as we interpret the same, it is laid down that where an owner of property is deprived of it by condemnation for public use or other specified cause and by the expenditure of all of the proceeds acquires another property equivalent in usefulness to replace the old, no gain or loss is realized from the mere fact of disposal of the old and the acquisition of the new property. Petitioner did not expend all of the proceeds in acquiring property equivalent in usefulness. Thus the case does not fall under the first provisions of section 203 (b) (5).

The last sentence of this subsection provides however: "If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended." This contemplates the instant situation. It is in the application of this provision that the respondent erred. It does not provide that all of such excess shall be deemed to be profit. Nor does it hold that any of the excess is profit. This last sentence of subsection (5) of section 203 merely provides a limitation on the gain, *if any*, to be determined in the event some part of the fund be not expended. The very language recognizes that the amount of gain does not depend on the fact of there being a remainder in hand after replacement. The parenthetical clause " if any " is significant. It recognizes that though there be an excess there may be no gain. It thus refers us back to the fundamental principles normally used in determining gain or loss. Obviously, this section was intended not to penalize but to protect parties whose property may be taken on condemnation.

Approaching the question in the light of these considerations, we find that the gross award was $1,522,197.87, from which should be deducted the sum of $104,238.32 on account of expenses, leaving a net award of $1,417,959.55 applicable to the payment of bonds, taxes and liens and in reimbursement of petitioner for its property. The cost of petitioner's entire plant, as of March 1, 1913, was $1,494,450.29, to which there had been added expenditures aggregating $117,098.20, making a total cost of $1,611,548.49. Against this there had been allowed depreciation amounting to $183,253.43, making a depreciated

cost of plant at the time it was taken by the Government of $1,428,-295.08. This sum is greater than the net award after payment of expenses and consequently there was no gain as contemplated by section 204 (b) of the Revenue Act of 1924.

It follows that there is no deficiency for the year 1924.

*Decision will be entered for the petitioner.*