## M. J. CALDBECK CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82120.   Promulgated August 19, 1937.

*Ralph J. Belville, C. P. A.*, for the petitioner.
*L. W. Creason, Esq.*, for the respondent.

OPINION.

ARUNDELL: The petitioner in this case realized an admitted gain of $21,409.54 from the proceeds of the insurance carried on its building that was destroyed by fire. This gain it says is a nonrecognized gain under the provisions of section 112 (f) of the Revenue Act of 1932. That section,[1] set out in full in the margin, provides that,

---

[1] SEC. 112. (f) INVOLUNTARY CONVERSIONS.—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

where property is involuntarily converted into money which is forthwith in good faith, under the Commissioner's regulations, expended in the acquisition of other property similar or related in service or use, or in the establishment of a replacement fund, no gain or loss shall be recognized.

We think it beyond serious question that the old and the new buildings were "similar or related in service or use" within the meaning of the statute. Both were business properties; in the old, part of the income was from rents from stores on the ground floor and part from the operation of a motion picture theater; in the new, the income was from rents from ground floor stores. There were differences in the type of construction and the height and depth of the buildings, but the statute does not require exact physical duplication. *Cotton Concentration Co.*, 4 B. T. A. 121.

We do not understand the petitioner to seriously contend that there was an actual expenditure "forthwith" within the meaning of the statute. More than four years elapsed between the receipt of the insurance and the expenditure in the construction of a building to replace the one destroyed. We have heretofore construed the term "forthwith" to mean: "As soon as by reasonable exertion, confined to the object, it may be accomplished." *Chickasha Cotton Oil Co.*, 18 B. T. A. 1144; *Paul Haberland*, 25 B. T. A. 1370. In *August Buckhardt*, 32 B. T. A. 1272, we held a period of two years to be within the statutory term. However, in that case the taxpayer, during the two-year period, prosecuted diligently his search for property similar to the property condemned. The facts here are different. It was entirely within the petitioner's power to construct a new building immediately following the destruction of the old. The delay was occasioned by the apprehension that tenants could not be found. This, in our opinion is vastly different from a delay occasioned by inability to locate similar property as in the *Buckhardt* case. We are aware of the economic conditions existing in 1932 and realize that hesitancy to expend money in new construction was a natural consequence of those conditions. Giving full recognition to those conditions and also to the decisions holding the involuntary conversion section to be a relief provision, we can not persuade ourselves that money held for more than four years before being expended has been expended "forthwith."

There is left the question of whether the petitioner "forthwith" established "a replacement fund" as permitted by the statute and regulations. The petitioner did two things which it points to as bringing it within the statute. First, it invested some $30,000 of the proceeds of the insurance in Federal and municipal bonds in 1932 and held those bonds, with slight changes to take care of redemptions, through 1934 and continued to hold $25,000 of bonds

through 1935. Second, it set up an account called "reserve for reconstruction" in the amount of the profit realized, $21,409.54, and carried that account, with slight changes of less than $200, through the year 1935.

Article 580 of Regulations 77 provides that where it is not practicable to replace or restore the converted property, the taxpayer may obtain permission from the Commissioner to establish a replacement fund in his accounts. In such case, the taxpayer is required to make application on form 1114 for permission to establish a replacement fund and to furnish a surety bond in an amount not in excess of double the amount of estimated tax that would be payable if no replacement fund were established. Section 112 (f) of the statute makes nonrecognition of gain dependent on compliance with the Commissioner's regulations.

In *Francis V. duPont et al., Coexecutors*, 31 B. T. A. 278, we pointed out that it was not the intent of the statute to completely exonerate involuntary gains from tax, "but rather to condition the extent of the relief upon the taxpayer's own actions after realizing the gain." Continuing in that case we said:

\* \* \* In other words, while recognizing the inequity of taxing involuntary gains in all cases to the same extent as voluntary gains, once the gain is realized the taxpayer has several avenues open to him, any one of which he may voluntarily take and thus by his own action place a limit on the amount of tax he will be required to pay. He may elect to pocket his gain and subject it to tax in its entirety. He may, under the respondent's regulations, replace the converted property at a cost at least equal to the proceeds of the conversion, or if this is not practicable, he may establish a replacement fund and thus escape any tax. Or he may replace in part and become subject to tax on a part of the gain realized.

In allowing a taxpayer these options to fix for himself the amount of his tax and the year of taxation it is not unreasonable that the Government should safeguard its revenues by provisions to insure payment of whatever amount is ultimately due based on the taxpayer's election. This has become particularly important under the recent taxing acts, which have shortened the period in which the Government may assess and collect. The regulations promulgated by the Commissioner are designed to assure ultimate payment of whatever is due when the taxpayer eventually replaces. They ask nothing more than that and they ask for no advance deposit or payment. Nothing in the regulations is pointed out as being unreasonable or working a hardship on the taxpayer. We think it not unreasonable to require compliance with the simple rules laid down by the regulations as a condition to the postponement of tax on a realized profit.

It is plain that in this case there has been no compliance, nor any gesture towards compliance, with the regulations. The petitioner

neither sought nor obtained permission to establish a replacement fund nor did it file a bond covering the tax. In addition to the matter of failure to comply with the regulations, it is at least doubtful whether the investment of part of the insurance proceeds in bonds can be regarded as the establishment of a replacement fund. That investment was not marked on the books as being held for any particular purpose, and for the entire period of four years that the investment was held it was available for any purpose. No resolution of the directors limited its use or required it to be held for any particular purpose. The account designated "Reserve for Reconstruction" can not be regarded as a replacement fund within the statute. It is to be noted that the amount so labeled was only the amount of the profit realized from the insurance proceeds. We do not believe the statute contemplates that profit shall escape taxation by labeling it a reserve. The statute does not speak of a reserve. It provides for a replacement fund. The reserve carried on the books in this case can not be treated as meeting the statutory requirement of a replacement fund.

*Decision will be entered for the respondent.*