## LYNCHBURG NAT. BANK & TRUST CO.

### v.

## COMMISSIONER OF INTERNAL REVENUE.

### No. 6695.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 23, 1953.

Decided Dec. 5, 1953.

Robert J. Heberle, Richmond, Va., for petitioner.

Walter Akerman, Jr., Sp. Asst. to Atty. Gen., Washington, D. C. (H. Brian Holland, Asst. Atty. Gen. and Ellis N. Slack, Sp. Asst. to Atty. Gen., Washington, D. C., on brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Lynchburg National Bank & Trust Company, the taxpayer in this case, contends that under the provisions of Section 112(f) of the Internal Revenue Code, 26 U.S.C.A. § 112(f),[1] no gain

1. "§ 112. Recognition of gain or loss—
\* \* \* \* \* •

"(f) (As amended by Sec. 151, Revenue Act of 1942, c. 619, 56 Stat. 798). *Involuntary conversions.* If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in

should be recognized from the receipt by it in the taxable year 1946 of the proceeds of an insurance policy received by it because of a fire loss on a building which adjoined its banking house in Lynchburg, Virginia.

The bank bought the adjacent property in 1940 for $37,500 of which it allocated $32,274.75 to the land and $5,225.25 to the building. The purpose was to demolish the building and erect an addition to the bank building so as to expand the available space for banking activities; but due to war restrictions the project was postponed and the building was rented by the bank to tenants, the front half of the first floor for a retail shoe store and the rear of the first floor and the second and third floors for a restaurant. The taxpayer took annual depreciation on the building for tax purposes.

This situation continued until 1946 when the entire rear half of the building was damaged by fire and was torn down. The taxpayer received $9802.84 from the Insurance Company on account of the fire loss and received permission from the Commissioner of Internal Revenue to establish a replacement fund. Thereafter the time limit within which the replacement could be made was extended from time to time until 1949 when the remainder of the building was demolished and construction of the addition to the bank covering the entire lot was begun. The cost of demolition was $2,273.51. The addition was completed in 1950 at a cost in excess of the insurance money and has since been used entirely for the private offices and safe deposit boxes of the bank.

the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain shall be recognized, but loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized to the extent of the money which is not so expended (regardless of whether such money is received in one or more taxable years and regardless of whether or not the money which is not so expended constitutes gain)."

The Commissioner determined a deficiency of income tax in the sum of $2490.42 for the year 1946 based in large part upon the addition to the taxpayer's income of the proceeds of the insurance policy and to a small extent upon a disallowance of depreciation on the building on the ground that the entire purchase price was allocable to the land since the taxpayer was only interested in acquiring the land and hence the improvements have a basis of zero under the Treasury Regulations and decisions of the courts. On petition for review the Tax Court sustained the Commissioner's determination. 20 T.C. ——.

The taxpayer concedes that when the taxpayer acquires property with the intention of demolishing the buildings thereon he sustains no deductible loss on the demolition, but contends that the case falls within the provisions of Section 112(f) that if a property "is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted" no gain shall be recognized.

The Tax Court has held in a series of cases [2] that the test, as to whether property acquired after a compulsory or involuntary conversion is similar or related in service or use to the property converted, is a functional one; and accordingly the test is not met by the substitution of a building used for banking purposes in place of a building used as a shoe store and a restaurant. To hold otherwise would be to say that the replacement of one commercial building by another commercial building is sufficient under the statute to avoid the recognition of gain, no matter how dis-

2. Washington Market Co. v. Commissioner, 25 B.T.A. 576; Haberland v. Commissioner, 25 B.T.A. 1370; Buckhardt v. Commissioner, 32 B.T.A. 1272; M. J. Caldbeck Corp. v. Commissioner, 36 B.T.A. 452; Winter Realty & Construction Co., 2 T.C. 38; Id., 2 Cir., 149 F.2d 567; Massillon-Cleveland-Akron Sign Co. v. Commissioner, 15 T.C. 79.

similar or unrelated their respective purposes may be, and we do not think that the statute has that meaning.

We have no need to pass on the question of depreciation. The amount involved in this item is so trivial that the taxpayer indicated at the time of the argument that the recomputation of the tax on this ground alone would not be worth the effort involved.

Affirmed.