## APPEAL OF THE HENDERSON OVERLAND COMPANY.

Docket No. 4776.    Decided September 27, 1926.

In the case of property acquired in exchange for stock prior to March 3, 1917, if the value thereof is clearly and substantially in excess of the par value of the stock exchanged, such excess may be treated as paid-in surplus in the computation of invested capital.

Value of property acquired, determined.

The petitioner acquired a lot of the value of $165,000. The lot was acquired as a site for a garage building. It was subsequently sold pursuant to a decree issued in a condemnation proceeding and a portion of the proceeds of the sale within 60 days after receipt was expended in the purchase of the stock of a corporation owning similar property. *Held*, that to the extent such proceeds were expended in the acquisition of a similar site, the petitioner is entitled to relief under the provisions of section 234(a)(14).

*Held*, that the value of certain demand notes given by the stockholders to the petitioner may not be included in invested capital.

*Andrew M. Henderson, Esq.*, and *Arthur L. Jones, C. P. A.*, for the petitioner.

*George G. Witter, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency in income and profits taxes for the years 1919 and 1920 in the amount of $15,808.77. The petitioner alleges the following errors:

1. That the Commissioner has refused to permit the petitioner to include tangible property, acquired for stock prior to March 3, 1917, in invested capital at its actual value at the time paid in.

2. That the Commissioner has erred in determining the profits from the sale of property through condemnation proceedings.

3. That the Commissioner has refused to permit the petitioner to include promissory notes of stockholders, received upon subscriptions to stock, as invested capital.

#### FINDINGS OF FACT.

The petitioner is an Ohio corporation with its principal offices at Walnut and Boardman Streets, Youngstown.

From 1910 to August, 1916, James A. Henderson, as an individual, engaged in the sale of automobiles in Youngstown, Ohio, having the agency, for a restricted territory, for the sale of Overland and Willys-Knight automobiles. In 1916 the manufacturers of Overland and Willys-Knight automombiles offered to Henderson a distributing agency for five or six counties for the sale of their

automobiles, provided he acquired or caused to be acquired for his use an improved, enlarged and more centrally located place of business. During the early part of the year 1916, Henderson, after securing the approval of the representative of the manufacturers, decided upon Lot No. 417 in the City of Youngstown as fulfilling his requirements.

This lot was the property of Mahoning County and had been several times offered for sale. In August of 1916 Henderson submitted to the board of county commissioners a proposal to purchase it for $100,000. This offer was accepted by the commissioners and a contract was entered into detailing the terms of purchase.

The lot is situated on the southeast corner of the intersection of Wick Avenue and Wood Street and has a frontage of 150 feet on each street. It had been previously used by the county as a site for a courthouse and the old abandoned building still remained on the property at the time of the purchase. This building had no value in excess of the cost of removal. The location of the property and its general contour made it particularly adaptable to the business requirements of Henderson.

The petitioner corporation was organized on August 16, 1916, for the purpose of taking over from Henderson the automobile agency above referred to, the contract with Mahoning County, and all of the inventory and equipment used by Henderson in the operation of his business, and stock of the corporation was issued in exchange for all of such assets. Shortly thereafter the petitioner completed its plans for the erection of a modern automobile sales building and let contracts for the erection thereof. The work on the excavations was begun immediately, and as soon as practicable the foundations were laid. At this stage it was necessary to suspend operations because of the restrictions placed upon construction work shortly after the entry of the United States into the World War.

In October, 1919, the Erie Land & Improvement Co. instituted a condemnation proceeding wherein they sought to acquire the property which the petitioner had purchased from the county. On March 26, 1920, the court approved and affirmed an award of $250,000 fixed as the value of the land appropriated and $30,000 as the value of the improvements thereon. On October 22, 1920, the Improvement Company and the petitioner entered into a contract for the purchase and sale of the lot at an agreed consideration of $280,000 and this amount was subsequently paid to the petitioner.

The value of the lot on the date of its acquisition by the petitioner was $165,000 and thereafter there was expended $50,984.56 for improvements and $11,282.46 for legal expenses, the expenditure of the last two items being conceded by the Commissioner. The Com-

50144°—27——72

missioner in his computation placed upon the lot a value of $100,000 but allowed a deduction of $20,984.56 as a loss on sale of improvements.

Having been thus forced to dispose of Lot No. 417, the petitioner found itself again without a suitable location for its business and it proceeded immediately to investigate the various properties that were both suitable and available. It was finally determined that a lot and building owned by the Youngstown Carriage Co., a corporation, was suitable, and on December 24, 1920, the petitioner purchased all of the outstanding stock of that company for the sum of $194,000. Of this amount $73,845.34 represented the cost of the land acquired.

In or about the month of May, 1919, the petitioner decided to increase its authorized capital stock from $100,000 to $350,000 and on June 9, 1919, accepted notes from its stockholders in exchange for capital stock in the amount of $100,100, holding the stock as collateral security for the notes. Said notes were non-interest bearing and non-negotiable. No demand has ever been made for payment of the notes and no sum has ever been paid on account of the notes. The notes were not used as collateral security by the petitioner.

OPINION.

GREEN: The first issue relates to the value for invested capital purposes of Lot No. 417, City of Youngstown, State of Ohio, which the petitioner acquired for stock. The answer avers that the property for invested capital purposes should be taken at its cost to the transferror as provided in section 331 of the Revenue Act of 1918. This position is not well founded for the reason that the petitioner acquired the property prior to March 3, 1917. If the actual cash value of tangible property at the time paid in for stock is shown to have been clearly and substantially in excess of the par value of the stock issued therefor, such excess shall be treated as paid-in surplus for the purposes of invested capital. See section 326 of the Revenue Act of 1918. Applying the law to this issue—if the actual cash value of Lot No. 417 was clearly in excess of the par value of the stock issued therefor, the excess shall be treated as paid-in surplus. We are satisfied that the actual cash value of the lot was in excess of the par value of the stock issued therefor. A careful examination of the record convinces us that, apart from improvements, the lot had an actual cash value at the time paid in of $165,000, and such value should be used for invested capital purposes.

The second issue relates to the alleged profit which the Commissioner has assigned to the forced sale of the lot in 1920. The value

of the lot (the property condemned) has been found to be $165,000, and were it not for the provisions of section 234(a)(14) of the Revenue Act of 1921, the computation of the profit resulting from the forced sale would be a mere matter of mathematics. The petitioner avers that it is entitled to the benefits of the section of the statute just cited, which reads as follows:

SEC. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

    *        *        *        *        *        *        *

(14) If property is compulsorily or involuntarily converted into cash or its equivalent as a result of (A) its destruction in whole or in part, (B) theft or seizure, or (C) an exercise of the power of requisition or condemnation, or the threat or imminence thereof; and if the taxpayer proceeds forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, to expend the proceeds of such conversion in the acquisition of other property of a character similar or related in service or use to the property so converted, or in the acquisition of 80 per centum or more of the stock or shares of a corporation owning such other property, or in the establishment of a replacement fund, then there shall be allowed as a deduction such portion of the gain derived as the portion of the proceeds so expended bears to the entire proceeds. The provisions of this paragraph prescribing the conditions under which a deduction may be taken in respect of the proceeds or gains derived from the compulsory or involuntary conversion of property into cash or its equivalent, shall apply so far as may be practicable to the exemption or exclusion of such proceeds or gains from gross income under prior income, war-profits and excess-profits tax Acts.

The findings of fact show that in order to obtain the valuable distributing agency for the sale of Overland and Willys-Knight automobiles, it was necessary to acquire a suitable building lot, and that Lot No. 417 was admirably located as a site for a building to be used for the increased business of the petitioner. As soon as Lot No. 417 was transferred to the corporation, contracts were let for the erection of the building, excavation work was begun, and foundations were laid. The advent of the World War caused a cessation of building operations and, as soon as peace-time construction was permitted, petitioner found itself in the position where its property was about to be condemned. The findings of fact outline the facts in relation to the condemnation. Within approximately 60 days after petitioner had received payment for its property from the railroad company, it entered into a contract for the purchase of all of the outstanding capital stock of the Youngstown Carriage Co., which company owned land and other real estate well adapted for the business of the petitioner. The petitioner contends that in so far as it used the proceeds from the condemnation

sale to purchase property of a character similar or related in service or use to the property condemned, it is entitled to the benefits of section 234(a) (14) of the Revenue Act of 1921. The Commissioner states that no provision is found in the Revenue Act of 1918 for the relief which the petitioner seeks. Here again consideration has not been given to the retroactive provisions of section 234(a) (14) of the Revenue Act of 1921. The Commissioner, in his brief, contends that the petitioner purchased the stock of the Youngstown Carriage Co. and that stock is not property of a character similar or related in service or use to the property condemned. We do not think this argument well founded for the statute itself makes specific provision for the purchase or acquisition of 80 per centum or more of stock or shares of a corporation owning such property purchased.

The real question to determine is whether the petitioner with the proceeds of the condemnation sale proceeded forthwith in good faith to expend the same in acquiring other property similar in character or related in service or use to the property condemned. We think the petitioner proceeded forthwith, since the purchase of the property was consummated within sixty days after the receipt of the money from the condemnation sale and the good faith of the petitioner has not been challenged. The statute does not prescribe that the property acquired shall be absolutely identical in all respects with the property condemned. Here the petitioner had a lot with certain excavations and foundations for a building and he acquired a lot with certain buildings thereon. The two lots were similar in character and certainly were related in service or use, and we are of the opinion that in so far as the two lots are concerned, the petitioner is entitled to the benefits of the relief provisions of section 234(a) (14).

The third issue relates to the promissory demand notes which the petitioner received from its stockholders in payment for capital stock. The petitioner seeks to take the notes in the amount of $100,100 into its vested capital. The notes bore no interest and were non-negotiable. No payments have ever been demanded on the notes nor have any payments been made. The record is silent as to the solvency or financial responsibility of the makers of the notes. The determination of the Commissioner as concerns this issue is approved.

*Order of redetermination will be entered on*
*15 days' notice, under Rule 50.*