AUGUST BUCKHARDT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76255. Promulgated August 29, 1935.

*Robert J. Heberle, Esq.*, for the petitioner.
*I. Graff, Esq.*, for the respondent.

### OPINION.

ARUNDELL: The present proceeding arises on respondent's determination of a deficiency of $3,276.02 in petitioner's income tax for the year 1931. The principal issue is whether petitioner is entitled to the benefit of section 112 (f) of the Revenue Act of 1928 in computing taxable gain resulting from the involuntary conversion of his property. The facts were stipulated and we set them forth only in such detail as is necessary for a decision of the question presented.

On February 25, 1922, petitioner bought a farm of 5½ acres with a frame residence on it in the County of Queens, New York, N. Y., paying $10,000 for it. The value of the house at this time was $4,000

and its rate of depreciation 4 percent per annum. On this property he carried on vegetable truck farming, he, his three sons, and his daughter doing the work. The three sons and daughter became of age, respectively, in 1923, 1925, 1927, and 1929. In 1922 and 1923 he installed an irrigation and sprinkler system at a cost of $1,000.

On July 2, 1928, the city of New York condemned and took a strip of land covering 2¼ acres, running through the middle of petitioner's farm, in order to open up a street. On March 26, 1931, petitioner received from the city $38,698.85, as an award under this condemnation, comprising $33,827.66 as principal and $4,871.19 as interest.

On receiving the award, petitioner paid each of his four children $1,000 in compromise of their claims for services on the farm. He also paid $1,197.20 as attorney fees and $260 to a surveyor, for services in the condemnation proceeding and, after deducting $441.65 for his own use, deposited the remaining $32,000 to his credit in savings banks.

In 1931 petitioner paid $2,681.53 to recover his residence from the condemned property taken by the city and move it on his own land. Because of the city's work on the new street petitioner found it impossible to use his irrigation system or to farm the land as theretofore. He therefore spent the rest of 1931 and 1932 looking for a new farm. His counsel, who was connected with a mortgage company, helped him in this search, as did also a real estate broker and his own children.

Early in 1933 petitioner found a farm, of about 20 acres, suitable for his purpose of vegetable truck farming, near Hicksville, Long Island, and within 30 miles of his original farm. He acquired title to it on July 11, 1933, paying $12,000 therefor from his funds in the savings banks, and $119.22 for title search and $115 for counsel's fees. About September 27, 1933, petitioner contracted for the modernization of the new farm house and in November of that year paid out for this purpose $3,365.25 from his savings bank funds. Petitioner in March 1934 installed, at a cost of $3,030 which was also withdrawn from his savings bank funds, an irrigation and sprinkler system on the new farm similar to that used on the old. Petitioner carries on the same type of farming on the new property as on the old.

In making his income tax return for the calendar year 1931 petitioner, on advice that the condemnation award received from New York City was not returnable, did not report any part of the $38,698.35 so received as part of his income.

Petitioner made no application to the Commissioner for permission to establish a replacement fund and received no permission to do so under article 580 of Treasury Regulations 74.

In addition to the question concerning the application of section 112 (f) of the Revenue Act of 1928 [1] to the gain, there is a question as to the computation of the amount of gain realized. The respondent concedes that the asserted deficiency is excessive, since no allowance was made in his computation for the cost of the property taken nor for expenses incurred in the condemnation proceedings. There is a difference of $4,305.14 between petitioner's computation and respondent's, the respondent's being the higher. This difference results from (1) the manner of computation of gain on the house on the condemned property, and (2) the petitioner's claim for a deduction of $4,000 paid to his children and the respondent's failure to allow the deduction.

Petitioner uses as his basis for gain applicable to the house on the condemned property the depreciated cost in the amount of $2,986.67. The respondent allowed as a deduction from the principal of the award the amount of $2,681.53 paid by the petitioner to recover the house from the condemned portion of the land and move it to the land remaining to him. This difference results in $305.14 difference in the amount of gain. We think petitioner's method the proper one. We take it that the city condemned and purchased petitioner's house along with the land and the depreciated cost is the proper basis for determining gain or loss. The cost of repurchase from the city was a capital item and does not figure in gain or loss.

The amount of gain divided by petitioner among his four children in 1931 is claimed as a deduction from the amount of the condemnation award. We fail to see the connection between the two sums. We do think, however, that the $4,000 is allowable as an expense deduction from gross income for the taxable year. The three sons had come of age, respectively, in 1923, 1925, and 1927, and the daughter in 1929, and $1,000 to each for their services over those several years until 1931 does not appear excessive. Their assistance to petitioner on the farm after reaching their majority was no doubt material and payment for their services would constitute an ordinary and necessary expense of operating the petitioner's farm.

Petitioner concedes that the interest of $4,871.19 on the principal of the award was income in 1931.

---

[1] Sec. 112. (f) *Involuntary conversions.*—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

This brings us to the principal question of whether the net amount of the award for tax purposes, after these deductions and others set out in the stipulation and not disputed by respondent are made, may be further reduced under section 112 (f) of the act to the extent of that portion of the cash of the award which was reinvested by petitioner in another similar farm. The amount of this reinvestment is not in dispute.

In 1933 the petitioner bought a new farm at a cost of $12,000 and paid title fees and attorney fees of $234.22 in acquiring it. In the same year he paid $3,365.24 for remodeling the house on the new farm, which afterwards was similar to the house on the old farm. In 1934 he paid $3,030 for the installment of an irrigation and sprinkler system on the new farm. These amounts aggregate $18,629.47 and are not disputed by respondent. Furthermore, the respondent concedes that this amount was " expended in the acquisition of other property similar or related in service or use " to the property taken under the condemnation proceedings, within the meaning of the statute. But he contends that the amount was not spent " forthwith " by the petitioner after the receipt of the award, within the meaning of the same provision.

The award was made on March 26, 1931. The statute requires in the first place that the money received on the conversion·shall be expended in the acquisition of similar property " in good faith." No suggestion is made here that the petitioner did not withhold the return of the award money in good faith. He had received advice that money paid him by the city of New York was not taxable income, and, relying on that advice, as in the circumstances he might well do, he made no return of it in March 1932. He therefore made no application to the Commissioner under article 580 of the Treasury regulations for leave to establish a replacement fund. His intention to use the money for replacement, however, and his ultimate use of the money for that purpose are both abundantly clear. On receiving the award he deposited all that was not immediately necessary for settlement of claims against him in savings banks in New York City. The facts state unequivocally that in buying his new farm, and in paying for the improvements on the house and for the installation of the new irrigation system, petitioner used money withdrawn from his savings bank funds. The money used for the new property is thus unmistakably earmarked. Cf. *Wilmore Steamship Co.* v. *Commissioner*, 78 Fed. (2d) 667. And the good faith of petitioner in carrying out his original intention is amply demonstrated by the fact that he had already reinvested the disputed amounts in new property prior to March 2, 1934, when, according to respondent's brief, the knowledge of petitioner's receipt of the award first came to the re-

spondent's ears. In these circumstances, we can not listen to any suggestion that the conversion was pretended to avoid income tax.

The only question, then, is whether petitioner may avail himself of the benefit of the statute. To do so, he must show that he acted with due diligence in the circumstances. The statute uses the word "forthwith", a word by judicial definition and decision much broader than the word "immediately", used as an equivalent in respondent's regulations. Bouvier thus defines the adverb "forthwith": "As soon as by reasonable exertion confined to the object it may be accomplished." This definition received the Supreme Court's approval in *Dickerman* v. *Northern Trust Co.*, 176 U. S. 181.

About the time of the award the city broke ground and began to build a new street, which was 18 feet in elevation above the surrounding farm and made useless petitioner's irrigation system and prevented his raising a vegetable crop. He spent the balance of 1931 and all of 1932 looking for a new farm which would be suitable for the purpose of raising vegetables and within 60 miles of New York City, his market. Petitioner was in touch with a mortgage corporation which had large interests in Long Island and with a real estate firm. He examined many farms called to his notice by these firms, and by his four children. But potatoes had been grown on most of the farms which he examined and this fact, in his opinion, rendered the soil unsuitable for his purposes. It was not until early in 1933 that he found a suitable farm of 20 acres near Hicksville, Long Island, which he bought on July 11 of the same year. The record shows beyond question that the petitioner exercised from the beginning due diligence in his search for a farm substantially like that which had been sold and suitable for the same purposes. He might reasonably have expected to find such a farm very soon, but at any rate his search was continuous and steady.

But the interval between the payment of the award and the reinvestment of the cash received therefrom was approximately two years. Was this too long for us to say that the award money was converted "forthwith" into like property? In the peculiar circumstances here present we are of the opinion that it was not.

In *Paul Haberland*, 25 B. T. A. 1370, the Alien Property Custodian seized and sold petitioner's stock in a textile mill, paying over to the petitioner the proceeds in October 1921. In November of that year the petitioner organized a corporation to manufacture materials relating to the textile industry. The corporation's plant was completed in 1922 and it began operations on the first of November in that year. The petitioner invested substantial sums in the new corporation on its organization and continued to invest further sums through a period of nine years. It was apparent on the facts that a reasonable

period of time must elapse after the sale of the old business and before the organization of the new. In such circumstances, we held that sums received from the forced sale of petitioner's original mills and reinvested within 15 months of the involuntary conversion came within the meaning of the statute as constituting petitioner's initial investment in the new business. The advances made after that date we thought too remote to come within the statute.

We think the present case may be brought within the same rule without wrenching the meaning of the statute. It is a relief provision which should be liberally construed. *Washington Market Co.*, 25 B. T. A. 576. Cf. *Wilmore Steamship Co.* v. *Commissioner*, *supra*.

In view of our conclusion we think it unnecessary to discuss the alternative remedy offered by article 580 of Treasury Regulations 74, which requires the petitioner, if it is not practicable for him to make the replacement immediately, to obtain the Commissioner's permission to create a replacement fund. *Eastern Steamship Lines, Inc.*, 17 B. T. A. 787. But we agree with the respondent that the period for reinvestment allowable without the Commissioner's consent, although necessarily indefinite in its duration and limited only by what in judicial discretion shall be deemed reasonable, should in each instance be closely scrutinized, so as to avoid jeopardizing the interests of the Government, while giving effect to a liberal interpretation of the remedial provision. We think the facts of the instant case will bear such an examination, with the result in petitioner's favor.

We hold that petitioner is entitled to the benefit of section 112 (f) and his gain on the conversion should be computed accordingly.

*Decision will be entered under Rule 50.*