MARTIN MILLER and ESTER A. MILLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miller v. Commissioner
Docket No. 1306-72.
United States Tax Court
T.C. Memo 1973-286; 1973 Tax Ct. Memo LEXIS 5; 32 T.C.M. (CCH) 1375; T.C.M. (RIA) 73286; December 27, 1973, Filed. *5 In 1969, petitioner elected under section 1033 to defer the recognition of gain realized upon an involuntary conversion of property. Petitioner did not reinvest the proceeds in property within the statutory replacement period ending December 31, 1970. No application for extension of the replacement period was filed prior to or after December 31, 1970. Petitioner reinvested the proceeds in property in 1972. Held: Section 1033 is inapplicable because petitioner has failed to show reasonable cause for failure to file for an extension within the required time or that an extension was filed within a reasonable time after the expiration of the required period of time. Section 1.1033(a)-2(c) (3), Income Tax Regs.
*6 S. M. Schwartzfield, for the petitioners. Jay B. Kelly, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency in petitioners' income tax for the year 1969 in the amount of $2,093.93. Several issues have been settled by the parties. The sole 2 remaining issue is whether petitioners' acquisition of property after expiration of the statutory replacement period qualifies as replacement property under section 1033[1] when no request for extension of time within which to make replacement was filed. FINDINGS OF FACT Some of the facts are stipulated and found accordingly. Esther A. Miller (hereinafter referred to as petitioner) and Martin Miller are husband and wife who resided in Minneapolis, Minnesota, when the petition was filed. They filed a joint Federal income tax return for 1969 with the district director of internal revenue in St. Paul, Minnesota. In 1954, petitioner, her brother, Sidney M. Schwartzfield (hereinafter referred to as Sidney) *7 and her mother, Tillie Schwartzfield, inherited certain improved realty from the Estate of Leon Schwartzfield. The improvement was an apartment building located at 1527-29-31 Hawthorne Avenue, Minneapolis, Minnesota. The State of Minnesota Department of Highways instituted eminent domain proceedings which included this property. As a consequence of the proceedings the owners received a monetary award of $29,500 on January 13, 1969, from the condemning authority as payment for the taking of their apartment property. On January 15, 1969, petitioner received a check for $9,833.34 as her portion of the condemnation award. Petitioner's portion of the adjusted basis of the condemned property as of December 31, 1968 3 was $3,000. Petitioner was aware that the "tax consequences would be favorable" if the money was reinvested in other property. She therefore entrusted Sidney (an attorney) to locate and acquire replacement property for her as her agent. Petitioner did not report any of the gain realized on the involuntary conversion on the 1969 joint income tax return. Neither petitioner nor her agent has ever made a request to the district director for an extension of time within *8 which to reinvest the gain realized in 1969. Sidney was aware that section 1033 provided for an extension of the replacement period prior to the end of the requisite replacement period. On October 23, 1972, petitioner acquired real property with the funds realized from the 1969 involuntary conversion. OPINION Section 1033(a)[2] permits a taxpayer to elect the nonrecognition of gain from an involuntary conversion in the year realized 4 provided such gain is timely reinvested in property similar or related in service or use to the converted property. In this case, petitioner realized a gain upon an involuntary conversion in 1969 and made an election to defer such gain under section 1033 by virtue of the failure to include the sale on the 1969 joint income tax return. See James River Apartments, Inc., 54 T.C. 618 (1970), affd. per curiam 440 F.2d 412 (C.A. 4, 1971) and section 1.1033(a)-2(c) (2), Income Tax Regs. Petitioner, however, did not make replacement within the requisite statutory 5 period ending December 31, 1970; *9 nor did she apply for an extension of the period within which replacement can be made. Thus, the issue is whether, in spite of petitioner's failure to replace within the statutory period or to apply for an extension, the purchase of property in 1972 qualifies as a replacement for purposes of applying the nonrecognition provisions of section 1033. *10 Section 1033 provides that the replacement period can be set at such time and in such manner as the Secretary or his delegate may prescribe by regulations. Section 1.1033(a)-2(c) (3) of the Income Tax Regulations provides: (3) The period [in which replacement can be made] * * * is the period of time commencing with the date of the disposition of the converted property, or the date of the beginning of the threat or imminence of requisition or condemnation of the converted property, whichever is earlier, and ending 2 years (or, in the case of a disposition occurring before Dec. 31, 1969, 1 year) after the close of the first taxable year in which any part of the gain upon the conversion is realized, or at the close of such later date as may be designated pursuant to an application of the taxpayer. Such application shall be made prior to the expiration of 2 years (or, in the case of a disposition occurring before Dec. 31, 1969, 1 year) after the close of the first taxable year in which any part of the gain from the conversion is realized, unless the taxpayer *11 can show to the satisfaction of the district director - (i) reasonable cause for not having filed the application within the required period of time, and (ii) the filing of such application was made within a reasonable time after the expiration of the required period of time. The application shall contain all of the details in connection with the involuntary conversion. Such application shall be made to the district director for the internal revenue district in which the return is filed for the first taxable year in which any of the gain from the involuntary conversion is realized. No extension of time shall be granted pursuant to such application unless the taxpayer can show reasonable cause for not being able to replace the converted property within the required period of time. 6 In order for a taxpayer to make replacement of property after the requisite replacement period has run, he must show both a reasonable cause for failure to file an application for extension within that period *12 and that a subsequent filing was made within a reasonable period after the expiration of the replacement period. James E. Latimer, 55 T.C. 515 (1970). In this case, petitioner has failed to show compliance with either of these requirements. Petitioner contends that she had reasonable cause for falure to file for an extension prior to December 31, 1970, because her agent was informed by Internal Revenue Service representatives that he should wait until the end of the replacement year before filing. Sidney, however, testified that "the Internal Revenue mis-spoke or I misunderstood" about the time within which to file the extension. Thus, we cannot conclude that petitioner was misled by the Internal Revenue Service into not filing for an extension. Sidney's actions do indicate, however, that he was aware, prior to December 31, 1970, that an extension procedure did exist. Furthermore, the regulations clearly state that an application for extension must be filed prior to the end of the requisite replacement period. We hold that petitioner has not shown reasonable cause for failure to file an extension prior to December 31, 1970. Even if we accept petitioner's contention *13 that there was reasonable cause for not filing the extension before December 31, 1970, petitioner has never filed an application for extension and 7 thus has failed to meet the second requirement of section 1.1033(a)-2(c) (3), Income Tax Regs., that an application for extension be made within a reasonable time after the end of the statutory replacement period. Sidney testified that he was personally informed by Internal Revenue Service agents in January 1971 that the period for extension application had ended on December 31, 1970. He further testified that "I should have applied for an extension at that time [January 1971] even because afterwards when I read the Code and Regulations, I found that extensions may be applied for and possibly accepted even when applied for too late." Even though Sidney knew the requirement of the regulations, neither petitioner nor Sidney filed an application for extension nor have they offered any explanation why such application was never filed. Petitioner cites the case of August Buckhardt, 32 B.T.A. 1272 (1935), in support of her position. The Buckhardt case dealt with section 112(f) of the Revenue *14 Act of 1928 which required replacement "forthwith in good faith." The case is inapplicable to the specific replacement requirement of section 1033 and the prescribed regulations. Petitioner did not acquire replacement property within the requisite period and she did not apply for an extension of such 8 period as required under section 1.1033(a)-2(c) (3), Income Tax Regs. The provisions of section 1033 are therefore inapplicable to an acquisition of property in 1972. See Feinberg v. Commissioner, 377 F.2d 21 (C.A. 8, 1967), affirming 45 T.C. 635 (1966). Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise indicated. ↩
2. SEC. 1033. INVOLUNTARY CONVERSIONS. (a) General Rule. - If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation, or threat or imminence thereof) is compulsorily or involuntarily converted - * * * (3) Conversion into money where disposition occurred after 1950. - Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph: (A) Nonrecognition of gain. - If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. Such election shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe. * * * * * * (B) Period within which property must be replaced. - The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending - (i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized * * *. ↩